1
2
3          UNITED STATES DISTRICT COURT
4                DISTRICT OF NEVADA
5                      * * *
6   JULIUS JACOB LUDWIG,                    Case No. 3:18-cv-00361-MMD-CLB
7                            Petitioner,              ORDER
8        v.
9   ISIDRO BACA,[1] *et al.*,
10                          Respondents.

**I.    SUMMARY**

Petitioner Julius Jacob Ludwig filed a second amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254. (ECF No. 16 ("Petition").) This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court denies the Petition and denies Petitioner a certificate of appealability.

**II.   BACKGROUND**

Ludwig challenges a 2012 conviction and sentence imposed by the Second Judicial District Court for Washoe County ("state court"). Following a three-day trial, a jury found Ludwig guilty of eight counts of possession of stolen property; two counts of burglary; and one count of possession of a firearm by a convicted felon. (ECF Nos. 19-4,

---

[1]The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Northern Nevada Correctional Center ("NNCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved March 2022 under identification number 1045653). The department's website reflects that Perry Russell is the warden of that facility. *See* https://doc.nv.gov/Facilities/NNCC_Facility/ (retrieved March 2022). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, Perry Russell, as Respondent for the prior Respondent Isidro Baca, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

19-5.) On November 20, 2012, the state court adjudicated Ludwig a habitual offender under NRS § 207.010, and then entered a judgment of conviction sentencing him to 11 concurrent sentences of life without the possibility of parole. (ECF No. 19-12.)

Ludwig appealed his conviction based on theories of a conflict of interest with trial counsel Scott Edwards, unraised suppression claims, and abuse of discretion in sentencing. (ECF No. 20-1.) In April 2014, the Nevada Supreme Court affirmed his conviction and sentence. (ECF No. 20-6.) On May 19, 2014, Ludwig filed a state petition for writ of habeas corpus ("state petition"), seeking post-conviction relief. (ECF No. 20-9.) Ludwig was appointed post-conviction counsel and filed a supplemental petition with additional claims. (ECF No. 20- 14.) Following an evidentiary hearing, the state petition was denied. (ECF No. 21-6.) Ludwig appealed the decision on the basis of ineffective assistance of trial and appellate counsel, and the state court's purported abuse of discretion in dismissing the state petition. (ECF No. 21-13.) The Nevada Supreme Court affirmed the denial of relief, and a remittitur issued on June 13, 2018. (ECF Nos. 21-16, 21-17.)

In July 2018, Ludwig initiated this federal habeas proceeding pro se and requested counsel. (ECF Nos. 1-1, 1-2.) This Court later appointed the Federal Public Defender and granted Ludwig leave to amend his petition. (ECF No. 10.) He filed a counseled second amended petition for writ of habeas corpus (ECF No. 16) ("Petition") in May 2019, alleging seven grounds for relief. Respondents filed a motion to dismiss, which the Court granted in part, and denied in part, finding Grounds 1, 2, 4(B), 4(C), and 5 technically exhausted, but procedurally defaulted. (ECF No. 37.) The Court deferred consideration of whether Ludwig can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome procedural default of Grounds 1, 2, 4(B), 4(C), and 5 until the time of merits review. (*Id.*) The Court further held Ground 7 was unexhausted and Ludwig opted to dismiss his unexhausted claim and pursue his remaining claims. (ECF Nos. 39, 40.)

///

## III.   LEGAL STANDARD

### A.  Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

**B. Standard for Evaluation an Ineffective Assistance of Counsel Claim**

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that

*Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## IV.   DISCUSSION

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. In *Martinez*, the Supreme Court held that the absence or inadequate assistance of counsel in an initial review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. *See* 566 U.S. at 9. The Nevada Supreme Court does not recognize *Martinez* cause as cause to overcome a state procedural bar under Nevada state law. *See Brown v. McDaniel*, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that he nonetheless has a potentially viable cause and prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if "the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Martinez*, 566 U.S. at 17.

To establish cause and prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent deficient performance, the result of the post-conviction proceeding would have been different; and (3) the underlying ineffective assistance of trial counsel claim is a

substantial one. *See Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). Determining whether there was a reasonable probability that the result of the post-conviction proceedings would be different "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently, and that the deficient performance harmed the defense. *See Strickland*, 466 U.S. at 695-96. When evaluating counsel's choices, the Court must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 563 U.S. at 189.

Here, Petitioner advances only *Martinez* as a basis for excusing default for Grounds 1, 2, 4(B), 4(C), and 5. These grounds involve ineffective assistance of trial counsel claims.

### A.    Ground 1

In Ground 1, Ludwig alleges that trial counsel rendered ineffective assistance for failure to investigate or present any mitigation at Ludwig's sentencing in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 16 at 7-11.) He argues that trial counsel failed to set forth mitigating factors that Ludwig suffered from severe drug addiction, mental illness, and childhood abuse. (*Id.*) He further argues that trial counsel failed to order records to show he struggled with addiction and attempted treatment, that trial counsel failed to contact Ludwig's siblings to attest to childhood abuse, and trial counsel failed to hire a psychologist to evaluate Ludwig. (*Id.*)

Respondents argue that Ground 1 is unexhausted because Ludwig did not present

Ground 1 to the Nevada Supreme Court. Ludwig presented Ground 1 in his supplemental petition during initial review collateral proceedings. After an evidentiary hearing, the state court denied his claim. (ECF No. 21-5 at 117.) Respondents argue that *Martinez* applies only where a claim is defaulted during an initial review collateral proceeding and Ludwig's anticipated default of Ground 1 did not occur in an initial review collateral proceeding because he had asserted the claim in state district court. In his reply, Ludwig asserts that he did not present Ground 1 to the state district court because Ground 1 of his federal claim contains new factual support that fundamentally alters and significantly strengthens the claim rendering it a different claim. (ECF No. at 16.)

The Court agrees with Ludwig that Ground 1 was not presented to the state court because the additional factual allegations in the federal claim fundamentally alter the claim that was considered by the state court. In its July 31, 2020 order, the Court determined that Ground 1 was technically exhausted, but procedurally defaulted and subject to dismissal as procedurally defaulted unless Ludwig can show cause and prejudice under *Martinez*. (ECF No. 37 at 8.) Ludwig does not do so.

The Court has examined the transcript of the sentencing, and the other materials in the record regarding the sentencing, such as the Presentence Investigation Report (("PSI") filed under seal) and the Competency/Psychological Evaluation (filed under seal), and the Court finds that the ineffective assistance of counsel claim in Ground 1 is not substantial within the meaning of *Martinez*. *See* 566 U.S. at 14. (*See also* ECF Nos. 23-1, 23-2.) Ludwig does not show that his trial counsel performed unreasonably at sentencing or that the alleged deficiency was such as to give rise to a reasonable probability that, but for the alleged deficiency, the result of the sentencing would have been different. *See Strickland*, 466 U.S. at 688, 694. At sentencing, trial counsel argued for a 10 to 30 year sentence because Ludwig did not commit violent crimes and because Ludwig was not subjected to progressive graduated increased punishment over the course of his criminal history. (ECF No. 19-13 at 5-6.) Trial counsel further argued that

Ludwig was primarily convicted of possessing stolen property, rather than stealing it and Ludwig's underlying motivation for his nonviolent crimes was related to drugs. (*Id.* at 6-7.) Trial counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 687.

Further, the PSI presented additional mitigation evidence, including Ludwig's substance abuse history. (ECF No. 23-2 at 6.) The PSI provided that Ludwig first used methamphetamine at eighteen, experimented with cocaine and other drugs, completed drug counseling and attended rehabilitation facilities, including a five-year period of sobriety. (*Id.*) The PSI included information as to Ludwig's mental health history, including a past diagnosis of schizoaffective disorder (bipolar type), generalized anxiety, and chronic posttraumatic stress. (*Id.*) The PSI acknowledged that Ludwig had a mental health evaluation wherein he informed the evaluator that he was "good," because "he just wanted to get through [it]." (*Id.*) The "new" mitigating evidence proffered by Ludwig largely duplicated what was already presented in the PSI. There is no reasonable probability that the additional evidence Ludwig presented in his federal claim would have changed the outcome of sentencing. The Court denies Ground 1 as procedurally defaulted.

## B.    Ground 2

In Ground 2, Ludwig alleges that trial counsel rendered ineffective assistance for failure to object to the admission of evidence of uncharged crimes at his sentencing hearing in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 16 at 11-15.) He asserts that at sentencing, the State presented witnesses, who were victims of residential burglaries, but Ludwig was not charged with committing those burglaries. (*Id.* at 11.) He further asserts that the State argued that Ludwig committed more crimes than the ones for which he was charged. (*Id.* at 12.)

The Court held that Ground 2 is subject to dismissal as procedurally defaulted unless Ludwig can show cause and prejudice under *Martinez*. (ECF No. 37.) The Court, however, finds that Ground 2 is not substantial within the meaning of *Martinez*. *See*

*Martinez*, 566 U.S. at 14. Ludwig argues that the State referred to Janie Somps even though Ludwig was not charged with burglary of her residence. (ECF No. 16 at 11.) At sentencing, the State asserted as follows:

> Janie Somps is the first one, she and her husband are here today, they don't wish to address Your Honor any further, but I can relay to you that they had a significant amount of property taken from their home in a residential burglary. They found quite a bit in Mr. Ludwig's storage unit, but it pales in comparison to what was taken in the beginning.

(ECF No. 19-13 at 20.) As for Anthony Clark, the State provided that he was "another victim of one of the residential burglaries. Mr. Ludwig had approximately $14,000 worth of Mr. Clarke's property that was taken from his house in that storage unit." (*Id.* at 20-21.) The State provided that Maria Hartman was present at sentencing and "she had a large amount of jewelry taken, cash. Her door was pried open when she was out of town. Which is consistent with just about every victim who spoke at least as far as entry." (*Id.* at 21.) Danielle Cook was presented as a witness wherein she stated, "You went through everything of mine. You took money, you took jewelry . . . You took stuff my parents gave to me when I was first born. You took handguns. You took computers. You took clothes. . ." as she addressed Ludwig. (*Id.* at 21-22.) Ludwig asserts that he was never charged with burglary of Cook's residence. (ECF No. 16 at 12.)

Ludwig does not show that his trial counsel was deficient for failing to object to consideration of information regarding uncharged burglaries at sentencing. The trial court has broad discretion on questions concerning admissibility of evidence at a penalty phase. *See Pellegrini v. State,* 764 P.2d 484 (1988). Within the frame of procedural due process, a district court judge's discretion when imposing a sentence is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *See United States v. Tucker,* 404 U.S. 443, 446 (1972). Accordingly, Ludwig fails to show that trial counsel had a reasonable basis for objection at sentencing.

In addition, Ludwig does not show that he was prejudiced by his trial counsel's

failure to object at sentencing. As to Janie Somps and Anthony Clark, the State clarified that they were victims of burglaries and Ludwig had possession of their property. (*See* ECF No. 19-13 at 20-21.) The sentencing judge also presided over the trial wherein the State presented testimony and evidence regarding the burglaries of the Croney residence and the Messerli residence to which Ludwig was ultimately convicted. (*See* ECF Nos. 18-16 at 7-18, 19-1 at 20-31.) At trial, the State presented evidence of a phone call wherein Ludwig stated he had ten firearms in his storage unit and victims identified their stolen property in the storage unit. (ECF No. at 159.) There is no reasonable probability that an objection at sentencing by trial counsel as to the reference or testimony related to uncharged burglaries would have changed the outcome of sentencing. The Court denies Ground 2 as procedurally defaulted.

## C.    **Ground 3**

In Ground 3, Ludwig alleges that he was denied his right to counsel because the trial court did not appoint new counsel due to a conflict of interest in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 16 at 15.) He asserts that he communicated to the state court that there was a breakdown of communication with counsel and that he was unable to reach his trial counsel. (*Id.*) He further asserts that he communicated to the state court that he wanted trial counsel to file a motion to suppress and requested new counsel. (*Id.* at 15-16.) On direct appeal, the Nevada Supreme Court held as follows:

> Third, appellant argues that a conflict of interest arose with trial counsel and therefore the district court should have appointed new counsel. He specifically complains that trial counsel refused to file a motion to suppress evidence and failed to communicate with him and that he had not been provided with certain discovery matters. "Absent a showing of adequate cause, a defendant is not entitled to reject his court appointed counsel and request substitution of other counsel at public expense." *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). We have adopted a three-factor analysis in reviewing a district court's denial of a motion substitution of counsel: "'(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion.'" *Id.* (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).

Considering the record as a whole, the crux of appellant's conflict with counsel appears to center on his disagreement with counsel about challenging the traffic stop and subsequent recovery of evidence from his vehicle and the storage unit, as well as other strategic decisions made by counsel. And it appears that, before trial, he was provided with or was aware of the discovery matters he argued were not previously provided to him. Further, appellant first raised his conflict-of-interest claim approximately six weeks before trial. The district court considered appellant's grounds and concluded that he had not established a conflict of interest that warranted appointment of new counsel but rather had merely expressed a disagreement with counsel over strategic decisions. *See Gallego v. State*, 117 Nev. 348, 363, 23 P.3d 227, 237 (2001) ("'Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense.'" (quoting *State v. Stenson*, 940 P.2d 1239, 1272 (Wash. 1997)), *abrogated on other grounds by Nunnery v. State*, 127 Nev. _, 263 P.3d 235 (2011)); *see generally Watkins v. State*, 93 Nev. 100, 102, 560 P.2d 921, 922 (1977) (observing that counsel's failure to make certain objections and pursue certain lines of investigation related to trial strategy and therefore were within the attorney's discretion). Based on this record, we conclude that the district court did not abuse its discretion by refusing to appoint appellant new counsel. *See Gallego*, 117 Nev. at 362, 23 P.3d at 237 (reviewing a district court's denial of a motion to substitute counsel for abuse of discretion).

(ECF No. 20-6 at 4-5.) The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). The Sixth Amendment, however, does not guarantee a criminal defendant a "meaningful relationship" with his attorney. *Morris v. Slappy,* 461 U.S. 1, 13 (1983). If the relationship between lawyer and client completely collapses, the refusal to substitute new counsel may violate a petitioner's Sixth Amendment right to effective assistance of counsel. *See Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir. 1970); *see also United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998) (fashioning a three-part test to determine whether a conflict rises to the level of being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the state district court]; and (3) the timeliness of the motion"). Even if a petitioner were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed under the *Moore* factors, their claim may still fail. The

United States Supreme Court has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel. *See Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019).

Ludwig does not allege that trial counsel had an actual conflict of interest. Rather, he asserts there was a conflict of interest based on irreconcilable conflict attributable to their differing opinions as to trial strategy, alleged lack of communication, lack of preparedness, and Ludwig's subjective distrust of counsel. The state court conducted a hearing regarding Ludwig's alleged conflict with trial counsel. (ECF No. 18-16 at 35.) The state court noted that trial counsel had been appointed four weeks prior after Ludwig's former attorney withdrew. (*Id.* at 53.) Trial counsel noted it was within his province to decide ethically what motions to file.[2] (*Id.* at 44.) Further, the State noted that the discovery file was given to Ludwig's former attorney who had given the discovery to Ludwig. (*Id.* at 53.) As the Nevada Supreme Court noted, the state court concluded that Ludwig merely expressed a disagreement with counsel over strategic decisions and did not establish a conflict of interest warranting appointment of new counsel. (ECF No. 20-6 at 4-5.)

In addition, the state court conducted a thorough inquiry into Ludwig's claim of a conflict, foreclosing the possibility of relief on this ground. *See Plumlee v. Masto,* 512 F.3d 1204, 1211 (9th Cir. 2008). The state court conducted a hearing regarding the conflict. (ECF No. 18-16 at 35.) The state court provided Ludwig the option to be represented by counsel or represent himself. (*Id.* at 46.) When Ludwig indicated he wanted to represent himself, the state court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975). (ECF No. 18-18.) At the *Faretta* hearing, Ludwig asserted that he did not want to represent himself. (*Id.* at 16.)

Petitioner has failed to meet his burden of proving that the Nevada Supreme

---

[2]Ludwig had three other court appointed attorneys prior to the appointment of his trial counsel.

Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts. The Court denies habeas relief as to Ground 3.

### D.   Ground 4

In Ground 4, Ludwig alleges that his trial counsel rendered ineffective assistance for: (a) failure to move to suppress evidence found in Ludwig's car and storage unit; (b) failure to move to suppress identification of Ludwig; and because (c) even if the state court denied a motion to suppress, the denial would have resulted in a better outcome for Ludwig. (ECF No. 16 at 20-29.) The Court will address each of these arguments below.

#### 1.   Ground 4(a)

Ludwig asserts that he was pulled over by police officers for being in a vehicle with a fake license plate and because the vehicle also allegedly matched the description of a vehicle seen leaving a residential burglary. (ECF No. 16 at 20.) Before arranging to have the car towed, Ludwig alleged that the police officers conducted an inventory search without his consent. (*Id.* at 21.) He further alleges that the police officers recovered a passport that belong to a victim of a residential burglary and suspended their search. (*Id.*) A search warrant was ultimately obtained, but Ludwig asserts that the original search and seizure were unconstitutional and that a motion to suppress would have been meritorious. (*Id.* at 23.)

Ludwig also alleges that officers became aware of his storage unit by monitoring his calls while he was in custody. (*Id.* at 21.) Because the officers believed the storage unit belonged to an individual named Shawna Gunmert, the officers requested her consent to search the storage unit, which she provided. (*Id.* at 22.) Ludwig alleges that Gunmert did not have actual or apparent authority to consent to a search of the storage unit. (*Id.* at 24-25.) He asserts that the search of the storage unit without valid consent or a warrant was unconstitutional and that a motion to suppress would have been

meritorious. (*Id.* at 25.)

The Nevada Supreme Court held:

First, Ludwig argues that trial counsel should have moved to suppress the seizure of his vehicle and evidence recovered from his storage unit as Fourth Amendment violations. We conclude that the district court did not err in concluding that the seizure of Ludwig's vehicle and the storage unit key and the search of the storage unit were lawful. The vehicle was properly stopped for bearing fictitious plates and matching the burglary victim's description of the perpetrators' vehicle, Ludwig was arrested for driving without a license, and the impound and inventory search were reasonable because the vehicle was in an unsecured public place and needed to be secured until a search warrant could be obtained. *See Diomampo v. State*, 124 Nev. 414, 432-33, 185 P.3d 1031, 1042-43 (2008). Officers testified that the vehicle was towed and impounded consistent with Sparks Police Department policy. *See id.* at 432, 185 P.3d at 1042; *see also United States v. Betterton*, 417 F.3d 826, 830 (8th Cir.2005) (holding that officer testimony as to police department impounding policy suffices). To the extent that Ludwig contends that officers were required to obtain a warrant before impounding the vehicle, he proffers no authority for this contention, and this court has upheld the propriety of such police action without a warrant. *See Diomampo*, 124 Nev. at 432, 185 P.3d at 1043. Ludwig also proffers no authority for his claim that a warrant was required to seize the storage unit key that was on a key ring with the vehicle key where the keys had already been lawfully seized in the course of the vehicle's inventory search. The search of the storage unit and the containers therein was proper because the renter of the unit, who had permitted Ludwig to use part of the space, expressly consented to its search and Ludwig took no apparent steps to protect his privacy interest in the containers from the renter. *See Casteel v. State*, 122 Nev. 356, 360, 131 P.3d 1, 3 (2006) (holding that defendant's girlfriend had authority to consent to search of defendant's closed bag located in apartment they shared, noting that defendant took no apparent steps to secure his privacy interest or deny his girlfriend access to the bag). As these suppression claims lacked merit, trial counsel was not ineffective in omitting them. *See Ennis v. State*, 122 Nev. 694, 706. 137 P.3d 1095, 1103 (2006). The district court therefore did not err in denying this claim.

(ECF No. 21-16 at 3-4.) The Nevada Supreme Court's rejection of Nasby's claim that trial counsel rendered ineffective assistance for failure to file a motion to suppress was neither contrary to nor an objectively unreasonable application of *Strickland*.

To succeed on a claim that his trial counsel failed to file a motion to suppress or a motion to dismiss, Ludwig must first demonstrate that the motion would have been meritorious. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 385 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the

principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonably probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

Trial counsel did not have a reasonable basis to file a motion to suppress the search and seizure of Ludwig's vehicle. At trial, Detective Marconato testified that he observed a vehicle fitting the description provided by a burglary victim, that he ran the license plate and the license plate was fictitious, and he initiated a traffic stop, during which Ludwig was arrested. (ECF No. 19-1 at 78-88.) He further testified that it was common practice to impound a vehicle when an arrest has been made. (ECF No. 21-5 at 11.) As the Nevada Supreme Court noted, officers testified that the vehicle was towed and impounded based on Sparks Police Department policy. (ECF No. 21-5 at 17.) The Nevada Supreme Court relied on *Diomampo v. State*, which provides that an inventory search must be carried out pursuant to a standardized official department procedure. *See Diomampo*, 124 Nev. at 432 (2008) (quoting *S. Dakota v. Opperman*, 428 U.S. 364, 376 (1976) "[T]he United States Supreme Court has held that an inventory search is per se reasonable, and accordingly constitutional, when it complies with police department policies.") A warrant is not needed where the search is incident to an arrest. *See Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990). Ludwig fails to show that the Nevada Supreme Court unreasonably determined that that the seizure of Ludwig's vehicle was lawful. Accordingly, Ludwig failed to demonstrate that a motion to suppress would have been meritorious and that trial counsel was deficient under *Strickland*.

Trial counsel did not have a reasonable basis to file a motion to suppress evidence recovered from the storage unit. Gunmert leased the storage unit and agreed to share the storage unit with Ludwig. (ECF No. 19-1 at 173-175.) She gave her key to the storage unit to Ludwig, did not have a key to the unit, and testified that a code is needed to enter the unit. (*Id.* at 176, 199.) Her belongings remained separated from his items in the back

corner of the storage unit. (*Id.* at 178.) Gunmert was the renter of the storage unit and had permitted Ludwig to use part of the storage unit. (ECF No. 21-16 at 3-4.) As the individual who leased the storage unit and mutually used the storage unit, Gunmert had authority to consent to its search. Further, even when the police make a mistake of fact as to a third party's actual authority, a search is not unlawful if the police reasonably believed that the third party had actual authority. *See Rodriguez*, 497 U.S. at 184-86. Ludwig failed to demonstrate that a motion to suppress evidence recovered from the storage unit would have been meritorious and failed to demonstrate that trial counsel was deficient under *Strickland*.

The Nevada Supreme Court was not unreasonable in rejecting Ludwig's ineffective assistance of counsel claim, nor was that court's decision based upon an unreasonable determination of the facts. Ground 4(a) is denied.

### 2.    Ground 4(b)

In Ground 4(b), Ludwig alleges that trial counsel rendered ineffective assistance for failure to file a motion to suppress the identification of Ludwig. (ECF No. 16 at 26.) An individual, Ryan Flynn, lived in the housing area Setting Sun, near the residence of Messerli, a residential burglary victim. (*Id.*) Flynn observed a man wearing a backwards cap, a t-shirt, and jeans jogging through a vacant lot next to his home. (*Id.*) The police took Flynn to identify whether Ludwig was the man he observed running through the vacant lot when the police initiated a traffic stop and arrested Ludwig. (*Id.*) Ludwig alleges that the police told Flynn that, "they might have found the guy [he] saw." (*Id.*) Ludwig stepped out of the patrol car, the police officer shined a light on him, and asked Flynn to identify whether Ludwig was the man he observed. (*Id.*) Ludwig asserts that this identification was highly suggestive. (*Id.*) He further asserts that a motion to suppress the identification of Ludwig would have been meritorious. (ECF No. 53 at 43.)

The Court held that Ground 4(b) is subject to dismissal as procedurally defaulted unless Ludwig can show cause and prejudice under *Martinez*. (ECF No. 37.) The Court,

however, finds that Ground 4(b) is not substantial under *Martinez. See Martinez*, 566 U.S. at 14. A motion to suppress would not have been successful and Ludwig failed to demonstrate that trial counsel was ineffective for not making such a motion. A pretrial identification may be constitutionally unsound if, based on the totality of the circumstances, the identification was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Jones v. State*, 95 Nev. 613, 617 (1979). A show-up identification "may be justified by countervailing policy considerations," such as the witness' fresher memory or the exoneration of innocent suspects. *Id.* Moreover, even if the identification procedure used by law enforcement was unnecessarily suggestive, due process is not necessarily offended if the identification was otherwise reliable. *See Johnson v. State*, 131 Nev. 567, 574-75 (Nev. Ct. App. 2015). Indeed, "reliability is the linchpin in determining the admissibility of identification testimony."[3] *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977).

At trial, Flynn testified that he observed a man running 65 feet away. (ECF No. 19-1 at 66.) He called the police as he was observing the man and provided a description of the man, including his clothing. (*Id.*) He testified that when the police took him to identify the man that Ludwig was wearing "the exact same hat I saw, the exact same shirt, pants, shows, same build, same size." (*Id.* at 67.) At trial, Flynn was shown a photo of Ludwig and he identified Ludwig as the man he observed running through the vacant lot. (ECF No. 19-1 at 68.) Although Flynn was 65 feet away, he had an opportunity to observe the man running through the vacant lot and described his appearance to the police over the phone as he was observing it. Flynn demonstrated that he was certain Ludwig was the man he observed, and confrontation took place within hours of the crime. Accordingly,

---

[3]Reliability is assessed using the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson*, 432 U.S. at 114.

these factors indicate that the identification was reliable.

Ludwig failed to demonstrate that he was prejudiced by trial counsel's failure to file a motion to suppress his identification. Messerli gave a description to the police of the vehicle that was parked in her driveway at the time of the burglary. (ECF No. 19-1 at 34.) Messerli also gave a description of the woman who was in the vehicle in her driveway, who was also in the vehicle with Ludwig when the police stopped him. (*Id.*) Messerli identified the vehicle and the woman while they were stopped by the police as the vehicle and woman in her driveway. (*Id.* at 38.) Officer Hammerstone testified that the base of Ludwig's shoe was consistent with the footprint he found at Messerli's residence. In light of the substantial evidence of Ludwig's conviction of burglary of the Messerli residence, Ludwig failed to show a reasonable probability that, but for trial counsel's failure to file a motion to suppress, the result of the proceeding would have been different. The Court denies Claim 4(b) as procedurally defaulted.

### 3.    Ground 4(c)

In Ground 4(c), Ludwig alleges that even if the state court erroneously denied a motion to suppress, Ludwig still would have had a better outcome despite the denial. (ECF No. 16 at 28.) The State offered that it would agree not to seek habitual offender treatment in exchange for a plea of guilty to three felonies with a one to ten year sentence on each. (*Id.*) Ludwig asserts that if trial counsel filed a motion to suppress and if the state court denied the motion, he would have accepted the State's offer. (*Id.*)

Ludwig relies on *Mahrt v. Beard* and argues that the Ninth Circuit held that an attorney's failure to file a motion to suppress that could have succeeded and caused the defendant to plead guilty, rather than go to trial provided ineffective assistance of counsel. *See Mahrt v. Beard*, 849 F.3d 1164 (2017). He further asserts that his trial counsel's failure to file a motion to suppress caused him to reject a favorable plea offer, which is analogous to the petitioner in *Mahrt*. (ECF No. 16 at 29.)

The Court held that Ground 4(c) is subject to dismissal as procedurally defaulted

unless Ludwig can show cause and prejudice under *Martinez*. (ECF No. 37.) The Court, however, finds that Ground 4(c) is not substantial under *Martinez*. *See Martinez*, 566 U.S. at 14. In *Mahrt*, although the Ninth Circuit noted that trial counsel should have filed a motion to suppress based on a chance that such motion would have succeeded, the Ninth Circuit nonetheless reversed the district court's grant of a writ of habeas corpus. *Mahrt*, 849 F.3d at 1172. The Ninth Circuit held that it would have been reasonable for the state courts to conclude that a motion to suppress, if brought, would likely have been denied. *See id*. Accordingly, in *Mahrt*, the Ninth Circuit did not find habeas relief was warranted on the petitioner's ineffective assistance of counsel claim. Ludwig fails to demonstrate that he is entitled to habeas relief based on *Mahrt*.

Although counsel must fully advise the defendant of his options in the context of plea offers, he is not "constitutionally defective because he lacked a crystal ball." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002). The relevant question is not whether "counsel's advice [was] right or wrong, but ... whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In order to show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Here, Ludwig does not allege that trial counsel failed to convey a plea offer to him, rather he alleges that he would have accepted the plea offer if trial counsel had filed a motion to suppress and the state court denied the motion to suppress. He fails to demonstrate that trial counsel was deficient for failing to file an unmeritorious motion to suppress or that he is entitled to habeas relief because trial counsel's failure to file an unmeritorious motion to suppress caused him to reject the State's plea offer. Accordingly, Ground 4(c) is denied as procedurally defaulted.

**E.    Ground 5**

In Ground 5, Ludwig alleges that trial counsel rendered ineffective assistance for failure to challenge the admission of Officer Hammerstone's testimony regarding a

footprint at the Messerli residence that matched Ludwig's shoe. (ECF No. 16 at 30.) He asserts that the State did not notice Officer Hammerstone as an expert witness and that Officer Hammerstone is not an expert in shoe print analysis. (*Id.*) Ludwig asserts that he was prejudiced because the shoeprint identification was the only evidence tying him to the burglary at the Messerli residence. (*Id.* at 31.)

The Court held that Ground 5 is subject to dismissal as procedurally defaulted unless Ludwig can show cause and prejudice under *Martinez*. (ECF No. 37.) In view of the evidence at trial supporting Ludwig's conviction, the Court finds that Ground 5 is not substantial under *Martinez*. *See Martinez*, 566 U.S. at 14. As previously stated, at trial, Flynn observed a man running in a vacant lot near the Messerli residence and he identified Ludwig when police initiated the traffic stop and in court. (ECF No. 19-1 at 66-68.) Messerli identified the vehicle and woman in her driveway as the same vehicle in which Ludwig was stopped by police and Ludwig was stopped with the woman identified by Messerli. (ECF No. 19-1 at 34.) Detective Marconato testified that he recovered tools commonly used for burglaries in Ludwig's vehicle. (ECF No. 19-1 at 89-93.) Accordingly, Ludwig fails to demonstrate that he was prejudiced by trial counsel's failure to challenge admission of Officer Hammerstone's testimony regarding the footprint at the Messerli residence.

In order to prevail on the ineffective assistance claim, Nasby must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, the Court need not "address both components of the inquiry" if Petitioner "makes an insufficient showing on one." *Id.* at 697. Petitioner has not sufficiently demonstrated here that he was prejudiced based on trial counsel's failure to challenge testimony regarding the footprint at the Messerli residence. Therefore, the *Strickland* inquiry need not continue, and Ground 5 is denied a procedurally defaulted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F.     Ground 6**

In Ground 6, Ludwig alleges that appellate counsel rendered ineffective assistance for failing to argue that Ludwig was convicted of two burglaries on insufficient evidence in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 16 at 31.) He asserts that a claim challenging the sufficiency of the evidence would have been meritorious on direct appeal. In its order denying Ludwig's state post-conviction petition, the Nevada Supreme Court held:

> Ludwig next argues that appellate counsel should have raised an insufficient-evidence claim as to his two burglary convictions. The first victim testified that he saw a man inside his house; that property was stolen from inside his house, including a watch that he identified in Ludwig's storage unit; and that he saw Ludwig fleeing outside. The second victim testified that she saw a woman in a strange car parked in her driveway, that property was missing from inside her house, and that police found some of this property on an adjoining hillside. The responding officer pulled over Ludwig driving a vehicle with a woman passenger that the second victim identified as the car and woman that were in her driveway and noted that Ludwig was sweating heavily. The second victim's neighbor testified that he saw Ludwig running through the hills near his and the second victim's homes. The evidence presented was sufficient for a rational juror to reasonably infer that Ludwig entered the two houses with larcenous intent. *See* NRS 205.060(1); NRS 205.065; *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 956 P.2d 1378 (1998). Accordingly, appellate counsel was not ineffective in omitting a futile insufficient-evidence claim. The district court therefore did not err in denying this claim.

(ECF No. 21-16 at 4-5.) The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).

"[F]aced with a record of historical facts that supports conflicting inferences," the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (reaffirming *Jackson* standard). The Supreme Court has emphasized that claims of insufficiency of the evidence "face a high bar in federal habeas proceedings ...." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). When the deferential standards of AEDPA and *Jackson* are applied together, the question for decision on federal habeas review is whether the state court's decision unreasonably applied the *Jackson* standard to the evidence at trial. *See, e.g.*, *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005) (citations omitted).

The state court record here reveals no reasonable probability appellate counsel would have succeeded with an insufficiency-of-evidence claim because the evidence strongly supported a finding that Ludwig entered both the Messerli and Croney residences and there was ample evidence from which a rational jury could infer he entered both residences with the intent to commit grand or petit larceny. *See* NRS § 205.060.[4]

### 1.    Burglary at Croney Residence

Dean Croney testified that his residence was for sale and when he returned home with his wife, a SUV was parked in his driveway. (ECF No. 18-16 at 7-8.) A man was sitting in the car while it was in his driveway. (*Id.*) When Croney asked the man what he was doing, the man stated, "my friend wants to buy your house." (*Id.*) Croney, however, did not see the man's friend. (*Id.* at 9.) Croney and his wife then opened their garage door and went into their home. (*Id.* at 10.) Croney testified that he heard the sliding door shut

---

[4]Residential burglary was defined in Nevada as follows:

1. A person who, by day or night, unlawfully enters or unlawfully remains in any:
   a. Dwelling with the intent to commit grand or petit larceny … is guilty of residential burglary.

NRS § 205.060.

and observed someone moving quickly away. (*Id.*)

Croney and his wife went to the front door to see the individual come around the corner of the house. (*Id.* at 11.) Croney identified Ludwig in court as the person he observed. They spoke to Ludwig and Ludwig stated he was interested in buying the house. (*Id.* at 13.) Croney's wife asked Ludwig what he was doing inside the house, and he said that he wasn't in the house. (*Id.*) Croney's wife continued to question Ludwig and Ludwig said that if they give him their number, he will arrange to come back with his wife. (*Id.*) Croney went back into the house, and he heard his wife yell that Ludwig was leaving. (*Id.*) Croney then observed the vehicle driving away. (*Id.* at 16.)

Croney returned to his office and noticed that items were out of place and that some of his belongings were missing. (*Id.* at 16-18.) Croney called the police. (*Id.*) When the police arrived, they checked the sliding door and noticed that it was unlocked even though it was always locked. (*Id.* at 17.) Croney testified that rings, two watches, a laptop, his wife's purse, and a videorecorder were missing. (*Id.* at 18.) Croney noticed a wheelbarrow in his backyard was turned over and underneath he found his laptop and videorecorder. (*Id.* at 19.) He also noticed the screen to the back bedroom window was in his neighbor's yard. (*Id.*) Over a month later, Croney watched the evening local news that portrayed the photo of a man and a woman regarding a robbery. (*Id.* at 21-22.) Croney identified the photo of the man as Ludwig and called the detectives. (*Id.*)

### 2.    Burglary at Messerli Residence

Ludwig was convicted of a burglary of a residence at Setting Sun Court in Sparks, Nevada. Elaine Messerli testified at trial that she resided at the home with her two sons and one daughter. (ECF No. 19-1 at 20.) There was a for sale sign in the front yard of the residence. (*Id.* at 21-22.) Messerli returned home and noticed a gold-silver Dodge Durango in the carport of her driveway. (*Id.* at 23.) She drove into her driveway and spoke to the woman in the driver's side of the Dodge Durango. (*Id.* at 24.) Messerli testified that the woman was nervous and said, "I love your house, you have a beautiful house. I love

your view. Is there any way I could look at it?" (*Id*. at 25.) Messerli informed the woman that the house was sold and told the woman to leave. (*Id*. at 26.) The woman left extremely slowly. (*Id*.)

Messerli testified that after the woman left, she noticed the side gate to her yard was open, which was never usually open, and that her dog that does not usually bark was barking. (*Id*. at 27.) Messerli called her neighbor because she suspected that someone could be in her home. (*Id*. at 29.) Messerli walked through the house with her neighbor to see if anyone was inside. (*Id*. at 30.) After her neighbor left, Messerli checked on her dog and realized belongings from her bedroom were missing. (*Id*. at 32-33.) Messerli's neighbor returned at her request and she dialed 911. (*Id*.)

Messerli testified that a police officer arrived quickly. (*Id*. at 34.) She noticed that someone had been through other rooms in the home, including her son's room and the kitchen. (*Id*. at 35-36.) The police officer asked Messerli to come with him to identify a vehicle and woman that had been pulled over. (*Id*.) The officer and Messerli went to the parking lot of a store and verified that it was the same Dodge Durango and woman that she had observed in her driveway. (*Id*. at 37-39.) Messerli testified that she did not recognize the man. (*Id*.) Messerli did not identify any of the items in the Dodge Durango as her belongings. (*Id*.)

When Messerli returned to her home, she noticed that her sliding door was unlocked even though she always locked it. (*Id*. at 39.) A crowbar with white paint was found in her backyard. (*Id*.) Messerli's belongings, including jewelry, watches, money, social security cards, and bank statements, were found in a backpack and garbage bag outside of a fence near her backyard. (*Id*. at 40.) More of Messerli's belongings were found in a suitcase in the area behind her backyard. (*Id*. at 46-48.) Except for a ring and a laptop, Messerli's belongings were recovered. (*Id*. at 49.) Footprints were found in the side yard near the gate, which was close to where the Dodge Durango was parked in Messerli's driveway. (*Id*. at 51.)

Ryan Flynn lived in the housing area that was a few subdivisions from Setting Sun, near the residence of Messerli. (ECF No. 19-1 at 61.) At trial, Flynn testified that he observed a man running 65 feet away. (*Id.* at 66.) Flynn observed a man wearing a backwards cap, a t-shirt, and jeans jogging through the vacant lot. (*Id.*) He called the police as he was observing the man and provided a description of the man, including his clothing. (*Id.*) He testified that when the police took him to identify the man that Ludwig was wearing "the exact same hat I saw, the exact same shirt, pants, shows, same build, same size." (*Id.* at 67.) At trial, Flynn was shown a photo of Ludwig and he identified Ludwig as the man he observed running through the vacant lot. (*Id.* at 68.)

Detective Marconato testified at trial. (ECF No. 19-1 at 74.) He was dispatched to a residential burglary that occurred recently and he was looking out for the Dodge Durango that was described to him. (*Id.* at 74-75.) He observed a Dodge Durango that matched the description and initiated a traffic stop because it matched the suspect vehicle and because the license plate was fictitious. (*Id.* at 79.) Detective Marconato observed that the male driving the vehicle was sweating profusely. (*Id.* at 80.)

Upon stopping the vehicle and questioning the man and woman, Detective Marconato testified that they were arrested and impounded the vehicle. (*Id.* at 88.) Detective Marconato initiated an inventory search of the vehicle and noted that there were suitcases in plain sight. (*Id.* at 89.) Detective Marconato recovered a passport in the vehicle that belonged to an individual who reported a residential burglary. (*Id.* at 91.) He recovered tools, such a pry bars, screwdrivers, latex gloves, and flashlights. (*Id.* at 93.)

James Hammerstone, a police officer, testified at trial. (ECF No. 19-1 at 103.) He testified that he was dispatched to a residential burglary that occurred close to his location. (*Id.*) Officer Hammerstone spoke with Messerli and dispatched the information he received from her to Detective Marconato over his radio. (*Id.* at 107.) Officer Hammerstone observed footprints near the side gate to Messerli's backyard. (*Id.* at 108.) Officer Hammerstone looked at the bottom of Ludwig's shoes when he was detained and

1    he testified that based on his training and experience that the base of Ludwig's shoes

2    was fairly consistent with the footprint. (*Id.* at 110.) Officer Hammerstone listened to

3    Ludwig's phone calls while he was in custody the same day that he was arrested. (*Id.* at

4    117.) During a phone call, Ludwig stated that he got careless and was upset that it took

5    the female driver half an hour to locate him. (*Id.* at 119.)

6        Ludwig argues that Messerli never saw Ludwig enter her home and a partial

7    footprint does not establish that he in fact entered the home. (ECF No. 53 at 58.) He also

8    argues that Croney did not see Ludwig inside his home, but only heard a door closing

9    and saw someone quickly leaving. (*Id.*) As the Nevada Supreme Court found, however,

10   the evidence presented was sufficient for a rational juror to reasonably infer that Ludwig

11   entered the two houses with larcenous intent. (ECF No. 21-16 at 4-5.) Croney heard

12   sliding doors close and observed someone quickly moving away and soon after observed

13   Ludwig appear around the corner of his home. (ECF No. 18-16 at 12.) Croney's

14   belongings were missing from his home. (*Id.* at 18.) Messerli observed a vehicle and

15   woman in her driveway and later identified the same vehicle and woman after the police

16   apprehended Ludwig and the woman shortly after. (ECF No. 19-1 at 20-30.) Messerli's

17   belongings were missing from her home. (*Id.*) Appellate counsel did not have a

18   reasonable probability of success on direct appeal because an insufficiency of the

19   evidence claim lacked merit.

20        The Nevada Supreme Court's rejection of Ludwig's ineffective assistance of

21   appellate counsel claim is an objectively reasonable application of *Strickland* to the facts

22   in the record. Ludwig is not entitled to habeas relief on Ground 6.

23   **V.**     **CERTIFICATE OF APPEALABILITY**

24        This is a final order adverse to Ludwig. Rule 11 of the Rules Governing Section

25   2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").

26   Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability

27   for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851,

28

864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI.   CONCLUSION

It is therefore ordered that Petitioner Julius Jacob Ludwig's second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 16) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute Perry Russell for Respondent Isidro Baca, enter judgment accordingly, and close this case.

DATED THIS 18th Day of March 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE